UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                            :

HUAWEI TECHNOLOGIES CO., LTD.;       :    **OPINION AND ORDER**
HUAWEI DEVICE CO., LTD.; and HUAWEI  :    **GRANTING HUAWEI'S AND**
DEVICE (SHENZHEN) CO., LTD.,        :    **DENYING PANOPTIS'S MOTION**
                    Plaintiffs,    :    **FOR SUMMARY JUDGMENT**
    -against-                      :
                                              :

PANOPTIS PATENT MANAGEMENT, LLC,    :    24 Civ. 4708 (AKH)
                                                :
                        Defendant.    :
------------------------------------------------------------- X

------------------------------------------------------------- X
                                              :

PANOPTIS PATENT MANAGEMENT, LLC;   :
PANOPTIS EQUITY HOLDINGS, LLC; OPTIS  :
WIRELESS TECHNOLOGY, LLC; OPTIS     :
CELLULAR TECHNOLOGY, LLC; and       :
UNWIRED PLANET INTERNATIONAL     :
LIMITED,                                  :
                 Counterclaim-Plaintiffs, :
                                              :
    -against-                      :
                                              :

HUAWEI TECHNOLOGIES CO., LTD.;      :
HUAWEI DEVICE CO., LTD.; and HUAWEI  :
DEVICE (SHENZHEN) CO., LTD.,        :
                                              :
                 Counterclaim-Defendants. :
------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiffs/Counterclaim-Defendants Huawei Technologies Co., Ltd., Huawei

Device Co., Ltd., and Huawei Device (Shenzhen) Co., Ltd. (collectively, "Huawei") and

Defendant/Counterclaim-Plaintiff PanOptis Patent Management, LLC ("PPM") and

Counterclaim-Plaintiffs PanOptis Equity Holdings, LLC ("PEH"), Optis Wireless Technology,

LLC ("OWT"), Optis Cellular Technology, LLC ("OCT"), and Unwired Planet International

Limited ("UPIL") (collectively, "PanOptis") entered into a Settlement and Patent License

Agreement (the "Agreement"), effective January 1, 2020, to resolve a patent litigation between the parties. Huawei Rule 56.1 Statement ¶ 1. Under the Agreement, PanOptis granted Huawei a license for the patents in dispute in exchange for an initial monetary payment of ███████, Agreement Section 6.1(a), and a contingent payment of ██████, to be due if PanOptis satisfied certain conditions within an agreed upon period.

The parties cross moved for summary judgment, asking me to determine whether the conditions required for the contingent payment have been met. Huawei seeks a declaratory judgment that the condition has not been met and that it is not required to pay the contingency fee. PanOptis seeks judgment that Huawei has breached the Agreement by failing to pay the contingency fee because the triggering conditions in Section 6.1(b)(ii) have been satisfied. For the foregoing reasons, I hold that the contingency fee requirements have not been met and Huawei is not required to pay the fee.

## FACTS

PanOptis is a company that owns thousands of standard essential patents ("SEPs") that are necessary for meeting cellular telecommunication standards in mobile devices around the world, including 2G, 3G, and 4G cellular standards. PanOptis Rule 56.1 Statement ¶ 5. PanOptis's patents were originally owned and developed by other companies, but PanOptis acquired them for licensing purposes. *Id.* ¶ 6. Huawei is a China-based technology company that makes mobile phones and other devices that meet cellular standards. *Id.* ¶ 7. Huawei has negotiated and used licenses to SEPs from PanOptis, including through a 2017 U.K. court-determined license to a limited set of SEPs and the Agreement at issue in this action. *Id.* ¶ 8.

In February 2020, PanOptis and Huawei entered into the Agreement, effective January 1, 2020, to resolve the patent litigation between the parties, concerning certain SEPs that Huawei was allegedly infringing. *Id.* ¶ 9. Pursuant to the Agreement, PanOptis granted Huawei

2

a license for the patents in dispute in exchange for an initial monetary payment of ███████,

Agreement § 6.1(a), and a contingent payment of ████████, to be due if PanOptis satisfied

certain conditions within an agreed upon period. Agreement § 6.1(b). The contingent payment is

due upon "PanOptis receiving gross non-refundable licensing revenue of at least ████████

███████████████████████) from third parties for the license of PanOptis'

SEP Patents" by January 1, 2024. Agreement § 6.1(b)(ii). If the ██████ threshold is not met,

Huawei is not required to pay the contingent amount. *Id.*

> 6.1 Royalty. In consideration of the license grant set forth in Article 4 by PanOptis to Huawei, Huawei shall:
>
> (a) Pay to PanOptis a non-refundable payment of
>
> (b) Pay to PanOptis a non-refundable payment of ████████ ████████████
>
> upon the earlier of:
>
>> (i) the GMS Allowance Date so long as such GMS Allowance Date occurs on or prior to June 30, 2020; or
>>
>> (ii) PanOptis receiving gross non-refundable licensing revenue of ████████ █████████████████) from third parties for the license of PanOptis' SEP Patents ("Third Party Revenue"), so long as such Third Party Revenue is received by PanOptis within four (4) years from the Effective Date of this agreement.
>
> The payment set forth in this Section 6.1(b) is contingent upon either condition (i) or (ii) actually occurring. If neither condition occurs by the dates defined therein then Huawei will not be required to make a payment under this Section 6.1(b). Further, to establish that the condition of Section 6.1(b)(ii) has been met, PanOptis shall supply to Huawei financial evidence certified by an officer of PanOptis that PanOptis has received the Third Party Revenue. Upon the occurrence of condition (i) or (ii) in this Section 6.1(b), Huawei shall pay the [sic] PanOptis the ████████████ within 45 calendar

3

days from Huawei's receipt of a signed hard copy invoice from PanOptis to Huawei setting forth the required payment.

Agreement § 6.1.

Huawei made the initial payment of ▮▮▮▮▮▮▮. The parties dispute whether the ▮▮▮▮▮▮ contingent payment is due. It is undisputed that PanOptis's non-refundable revenues come out to ▮▮▮▮▮▮▮▮ from licensing to third parties for SEP Patents, and that, after deducting foreign withholding taxes and other payments and fees, the net was ▮▮▮▮▮▮▮▮ PanOptis Rule 56.1 Statement ¶ 24, 27.

PanOptis provided a detailed account of each license, and of revenue receipt, on each license. The parties dispute one revenue item: ▮▮▮▮▮▮ from BW 51f, a litigation finance company ("BW"). Huawei Rule 56.1 Statement ¶ 19-20. That revenue item arose from a lawsuit between PanOptis and Apple.

PanOptis and Apple are engaged in patent litigation in United Kingdom and United States courts over Apple's alleged use and infringement of PanOptis's SEP Patents. *Id.* ¶ 24-26; *Optis Cellular Technology LLC, et al. v. Apple Retail UK Limited, et al.*, No. HP-2019-000006 (the "Apple Litigation"). A U.K. court, in a preliminary finding, valued a license from PanOptis to Apple to be ▮▮▮▮▮▮ and required Apple to escrow that amount in the U.K. Court pending final determination of the litigation. *Id.* ¶ 31. PanOptis has not yet received that payment nor granted a license to Apple for the SEP Patents. *Id.* ¶ 33.

On December 27, 2023, PanOptis and BW entered into an agreement selling to BW PanOptis's interest in the Apple Litigation for ▮▮▮▮▮▮ ("BW Agreement"). PanOptis Rule 56.1 Statement ¶ 103. Pursuant to the BW Agreement, BW purchased the right to receive the royalties that Apple may later pay to PanOptis for the SEP Patents as a result of the litigation. *Id.* ¶ 104.

Based on these facts, PanOptis contends that it has satisfied the Section 6.1(b)(ii) condition by receiving over ███████████ in "gross non-refundable licensing revenue." Huawei argues that PanOptis's revenue from BW 51f is not licensing revenue, and that therefore PanOptis has not met the ███████████ threshold under the terms of the Agreement.[1]

## LEGAL STANDARD

Summary judgment may be granted only when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Bronx Household of Faith v. Board of Educ.*, 492 F.3d 89, 96 (2d Cir. 2007).

The Agreement is governed by New York law. Agreement § 7.6(a). Under New York law, the interpretation of a contract "is a matter of law for the court to decide." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002). Here, "[t]he parties do not dispute the material facts underlying the claim" therefore, the case rests on interpretation of the contract, which "is a question of law." *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012). "Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate .... Only where the language is unambiguous may the district court construe it as a

---

[1] Huawei additionally argues that PanOptis improperly counted revenue received for payments outside of the scope of the Agreement's definition of SEP Patents. Huawei Br. at 3. PanOptis has moved to strike this argument for Huawei raising the issue late in discovery. ECF No 161. Because I hold that the contingency payment was not triggered because of the BW payment, I decline to decide this issue as it would have no bearing on the result.

matter of law and grant summary judgment accordingly." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006). The court shall "interpret unambiguous contractual provisions in light of their plain and ordinary meaning" and "in light of common speech and the reasonable expectations of a businessperson." *Philadelphia Indem. Ins. Co. v. Streb, Inc.*, 487 F. Supp. 3d 174, 184 (S.D.N.Y. 2020).

## DISCUSSION

As discussed further below, applying the definition of gross revenue employed by PanOptis, PanOptis has failed to meet the ▮▮▮▮▮▮▮ threshold to trigger the contingency payment required in the Agreement because the BW Agreement is not licensing revenue under Section 6.1(b)(ii). Therefore, I grant Huawei's motion for summary judgment and enter a declaratory judgment that the Section 6.1(b)(ii) requirements were not met.

### I.    Gross revenue under the Agreement covers the value of the patent licensing payments prior to deductions.

As a preliminary matter, I address whether the SEP patent payments to PanOptis should be calculated based on the gross figures, before withholdings, as argued by PanOptis, or the net cash actually received by PanOptis, as argued by Huawei. The Agreement states that the figure should be calculated from PanOptis "receiving gross non-refundable licensing revenue." Agreement at 6.1(b)(ii). Huawei contends that the term "receiving" unambiguously requires that PanOptis actually receive ▮▮▮▮▮▮ in cash revenue from qualifying licenses of SEP Patents. PanOptis argues that the term "gross" is unambiguous and its plain meaning includes withholdings for foreign taxes and other fees.

I agree with PanOptis. Huawei's interpretation relies on a strict and literal interpretation of the words "receiving" and "received" while ignoring the plain meaning of "gross" revenues. The plain meaning of gross is "an overall total exclusive of deductions (as taxes,

6

expenses)." *Lee v. BSB Greenwich Mortg. Ltd. P'ship*, 267 F.3d 172, 179 (2d Cir. 2001) (citing Webster's Third New International Dictionary 1002 (1993)). To adopt Huawei's interpretation of the contract would improperly convert the provision into a requirement for net payments, as Huawei's definition requires reductions for taxes and other fees. Therefore, I hold that whether the contingency threshold has been met shall be calculated according to PanOptis's figures of gross revenue.

II.   **The ███████ payment from BW is not "for the license of PanOptis' SEP Patents" under the Agreement.**

The key revenue at dispute is the ███████ payment from BW related to the Apple patent litigation. Whether this payment shall be included or not towards the contingent amount total is dispositive of whether the Section 6.1(b)(ii) condition is met. The question is whether it can be considered "licensing revenue" under the Agreement because it was not directly paid by Apple to PanOptis for a patent license. Agreement § 6.1(b)(ii). PanOptis contends that this payment is "licensing revenue ... for the license of PanOptis' SEP Patents" under the Agreement because BW paid PanOptis the ███████ to purchase royalties owed from Apple to PanOptis pursuant to a court-determined license in the litigation. PanOptis Mot. at 43. Huawei argues that the BW Agreement is not properly considered "licensing revenue" because the BW Agreement and payment is functionally a loan for monetization of the litigation, which remains pending. Huawei Mot. at 13.

I agree that the BW Agreement is not licensing revenue under the Agreement. The Agreement requires that PanOptis receive ███████ for "licensing revenue ... from third parties for the license of PanOptis' SEP Patents." Agreement § 6.1(b)(ii). Such language unambiguously requires that the transaction involve the grant of a "license" between PanOptis and the third party. The BW Agreement did no such thing, as it did not grant BW a license nor was BW's payment for

7

the purpose of receiving one. PanOptis's sale to BW of its expectation of a license is not revenue from a license. PanOptis has not actually received that license revenue, nor has it granted such a license. Therefore, the ███████ from the BW Agreement shall not be calculated toward the ███████ threshold under Section 6.1(b)(ii).

Absent the ███████ from the BW Agreement, PanOptis cannot meet the ███ ███ threshold of licensing revenue under Section 6.1(b)(ii). Therefore, the contingency payment in Section 6.1(b)(ii) has not been triggered and Huawei is not obligated to pay pursuant to that section.

Huawei also seeks attorney's fees. However, there is no provision for attorneys' fees in the Agreement, therefore Huawei's request for attorneys' fees is denied.

## CONCLUSION

For the foregoing reasons, the Court declares, pursuant to Huawei's complaint, that the contract condition under Section 6.1(b)(ii) has not been satisfied, and Huawei is not required to pay the ███████ contingent payment thereunder.

The Clerk of Court shall terminate ECF Nos. 137, 147, and 161, enter a judgment in favor of Huawei, taxes and costs in favor of Huawei, and terminate the case.

SO ORDERED.

Dated:     January 29, 2026
           New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

8